INHABITANTS OF WEST GARDINER, *versus* INHABITANTS OF FARMINGDALE.

Where conflicting testimony upon the question at issue is submitted to the jury, the Court have no authority to set aside the verdict, unless it *manifestly* was found from prejudice, bias or improper influence, or by a mistake of the facts or law of the case.

ASSUMPSIT for the support of a pauper, alleged to belong to the defendant town.

The case was tried at *Nisi Prius*, before RICE, J., when a verdict was returned for plaintiffs.

A motion was filed by defendants to set aside the verdict, as being against the evidence.

What the evidence was, sufficiently appears from the opinion of the Court.

*Emmons*, for defendants.

*Danforth & Woods*, for plaintiffs.

RICE, J. — The pauper had a derivative settlement in that part of Hallowell which is now included in the town of Farmingdale. During different periods of his life, he has been an inmate in the family of Samuel Clay, his brother-in-law, who resided in that part of the town of Gardiner, which is now included in the town of West Gardiner. Samuel Clay deceased in 1848, and since that time, McCurdy,

the pauper, has been much of the time in the family of Mrs. Clay, widow of said Samuel. In 1845, the town of Hallowell furnished supplies to McCurdy, as a pauper, by paying his board to Mr. Clay. These supplies were continued to the beginning of the year 1846, since which time, no supplies have been furnished by Hallowell.

The original settlement of McCurdy having been thus established upon the territory of Farmingdale, the plaintiffs would be entitled to a verdict, unless the defendants could show that he had lost that settlement by acquiring one in some other town. This they have attempted by proving such settlement within the present limits of West Gardiner, by a continued residence therein, for a period of five years together, during which time he had not received supplies as a pauper. The evidence shows the pauper to have been subject to occasional periods of mental alienation, and that although he was always at liberty to abide in the house of Mr. and Mrs. Clay, as a home, whenever he chose to do so, he occasionally absented himself and wandered about the country without any fixed place of abode.

Two questions were presented upon the testimony for the consideration of the jury. First, did McCurdy, at any time, after he was supplied by Hallowell in 1845, have his residence or home at Clay's? If so, was such residence continued for a period of five consecutive years, without legal interruption ?

The defendants contend that the evidence sustains both propositions. The plaintiffs deny both, and say that if, in fact, at any time after 1846, M'Curdy had his residence or home at Clay's, such residence did not continue for five years without interruption and without receiving supplies as a pauper from some town.

First, the plaintiffs maintain, that within less than five years after the supplies from Hallowell had been discontinued, the pauper was sent to the Insane Hospital, by authority of two magistrates, and that the expenses incurred at the hospital were paid, for him, as a pauper, by the city of Gardiner. The

proofs show that he was committed to the hospital, Sept. 6, 1850, by two justices of the peace, under the provisions of § 13, c. 178, R. S. This section of c. 178, was repealed by c. 33 of the Acts of 1847, by which Act different provisions for committing to the hospital, insane paupers, were provided. The commitment of the pauper by those magistrates was without legal authority and void, and no legal obligation was thereby imposed upon the city of Gardiner, to pay for his board or other expenses at the hospital. This payment, thus made, without liability, on the part of the city of Gardiner, was not furnishing supplies to 'M'Curdy, as a pauper, within the meaning of the statute, and could have no effect upon the question of his gaining a settlement.

To constitute a residence or home, which, if continued for five years without interruption, will establish a legal settlement, it is requisite that there should be at the commencement *actual personal presence,* accompanied with the intention to make that residence a home. The act and the intention must concur. When such a home is once established, it continues until it is intentionally changed or abandoned.

The proof was conclusive that for a period of more than five years from January, 1846, McCurdy had his abode, most of the time, at the house of Clay; and the tendency of the evidence was to show that during all that time, when he was in his right mind, he considered and treated that house as his home; yet there was also evidence of a contrary tendency, that which tended to show if he ever had intelligently adopted that place as his home he deliberately abandoned it before the five years had expired.

This evidence was all submitted to the jury, and there being no complaint, it is presumed, with appropriate instructions by the Court.

It is the province of the jury to consider and weigh conflicting testimony, and where there is evidence on both sides, courts will not feel authorized to disturb the verdict of a jury, unless the result is so manifestly erroneous as to make it apparent that it was produced by prejudice, bias or some im-

proper influence, or by mistake of the facts or the law of the case. The burden of relieving themselves from the derivative settlement of the pauper, was upon the defendants, and whatever may be our impression as to the preponderance of the evidence in the case, we do not think it so manifestly in favor of the defendants as to authorize us to disturb the verdict. *The motion is therefore overruled.*

SHEPLEY, C. J., and TENNEY and CUTTING, J. J., concurred.